UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Maurice Grant, | ) | CA No. 2:24-cv-4262-RMG-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| Berkeley County Sheriff's Office and | ) | |
| Deputy Austin Longieliere, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 and the South Carolina Tort Claims Act ("SCTCA"). ECF No. 1-1 at 36–42. He initially filed this lawsuit in January of 2024 in state court. ECF No. 1-1 at 2–8. After Defendants moved to dismiss the complaint in state court, Plaintiff amended the complaint to include a claim under 42 U.S.C. § 1983 in July of 2024. *Id.* at 36–42. Defendants then removed the action to this Court. ECF No. 1.

Before the Court is a Motion to Dismiss the Amended Complaint, filed by Defendants Berkeley County Sheriff's Office ("BCSO") and Austin Longieliere ("Longieliere"). ECF No. 4. Plaintiff filed a Response in Opposition to the Motion, ECF No. 5, and Defendants filed a Reply, ECF No. 7. The Motion is ripe for review.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2), (D.S.C.). Because the Motion is dispositive, this Report and Recommendation is entered for review by the District Judge.

## I.    BACKGROUND

Accepting the truth of the allegations in Plaintiff's Amended Complaint and viewing all inferences in the light most favorable to Plaintiff, *see E.I. du Pont de Nemours & Co. v. Kolon*

*Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011), the facts, for purposes of ruling on Defendants'
Motion, are as follows.[1]

On or around January 15, 2020, Plaintiff was a passenger in a vehicle driven by his cousin
on I-526. ECF No. 1-1 at ¶ 8. The vehicle got a flat tire and, while Plaintiff's cousin looked for a
safe place to pull over, law enforcement pulled the car over. *Id.* at ¶ 9. The officers demanded
Plaintiff and his cousin present their identification and car registration. *Id.* at ¶ 10. Subsequently,
more officers appeared, with one drawing his gun and pointing it at Plaintiff. *Id.* at ¶ 11.

Plaintiff asked why he was being arrested, and the officer informed Plaintiff that there was
a warrant out for his arrest for failing to stop for a blue light and evading arrest in October of 2019.
*Id.* at ¶¶ 12–13. Although Plaintiff protested and asserted there was no warrant out for his arrest,
the officer handcuffed Plaintiff, searched him and pushed him into the police vehicle, taking him
to the Berkeley County Detention Center, where he spent two nights until released on bond. *Id.* at
¶¶ 14–15.

According to the Amended Complaint, the warrant that led to Plaintiff's arrest was for a
different person ("the offender") with the same name as Plaintiff. *Id.* at ¶ 16. Specifically, the
North Charleston Police Department was pursuing someone named "Maurice Grant" on October

---

[1] Defendants' Memorandum in Support of their Motion to Dismiss includes facts for which no
citations to the Amended Complaint are provided, many of which the undersigned cannot find in
the Amended Complaint. For example, Defendants state that "upon information and belief, the
judge [in Plaintiff's criminal trial] considered a motion to dismiss during the trial and denied the
same." ECF No. 4-1 at 6. However, there is no such allegation in Plaintiff's Amended Complaint.

Defendants also ask the Court to take judicial notice of the underlying arrest warrant referenced in
the Amended Complaint, which they purport to attach as an exhibit to their Motion. ECF No. 4-1
at 1, fn. 1. However, the arrest warrant is not attached as an exhibit to Defendants' Motion. In any
event, while the Court can take judicial notice of filings in state court criminal cases, courts cannot
judicially notice "any specific factual finding, legal reasoning, or legal conclusion" contained in
those filings. *Kokinda v. Foster*, No. 3:21-cv-00154, 2024 WL 715962, at *2 (N.D.W. Va. Feb.
21, 2024) (citing *Corbitt v. Balt. City Police Dep't*, 675 F. Supp. 3d 578, 587 (D. Md. 2023)).

22, 2019, because of assault allegations made by his girlfriend. *Id.* at ¶¶ 17–18. The North Charleston Police Department contacted Defendant BCSO and gave Defendant BCSO the offender's name, Maurice Grant. *Id.* at ¶¶ 18–19. Defendant Longieliere, a BCSO officer (*id.* at ¶ 2), provided Maurice Grant's name to Defendant BCSO's dispatch, who located Plaintiff's South Carolina driver's license using the name given, and another officer positively identified the photograph on the driver's license as the offender. *Id.* at ¶ 20.

Defendant Longieliere impounded the offender's vehicle and confiscated a gun that was found in the impounded vehicle. *Id.* at ¶¶ 23–24. Neither the vehicle nor the gun belonged to Plaintiff. *Id.* at ¶ 25.

The incident report from October of 2019 described the offender as "slender," noting his weight as 185 pounds. *Id.* at ¶ 21. Plaintiff is six feet, three inches tall and weighs approximately 280 pounds. *Id.* at ¶ 22.

The Amended Complaint alleges that Defendants sought a warrant for Plaintiff's arrest based off his name and a physical description only, despite having access to additional evidence that would verify the identity of the offender. *Id.* at ¶ 26. Defendants initiated criminal proceedings against Plaintiff and continued to pursue criminal proceedings, despite having evidence that they had misidentified Plaintiff as the offender. *Id.* at ¶ 27.

The criminal proceedings were pending against Plaintiff for over three years until Plaintiff was found not guilty of evading arrest by a jury on November 10, 2023, and the charge for failure to stop for a blue light was dismissed on February 24, 2023. *Id.* at ¶ 28.

Plaintiff's Amended Complaint alleges three claims: (1) 42 U.S.C. § 1983 for malicious prosecution against Defendant Longieliere; (2) Gross Negligence under the SCTCA against Defendant BCSO; and (3) Malicious Prosecution under state law against Defendant BCSO. ECF

No. 1-1 at 36–42. Plaintiff seeks monetary damages. *Id.*

## II.    <u>LEGAL STANDARD</u>

Defendants move for dismissal of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)); *see Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of [affirmative] defenses."). Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant will have "fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not analogous to a "probability requirement," rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III.    DISCUSSION

Defendants move to dismiss the Amended Complaint "for failure to properly state a claim against [Defendant] Longieliere, failure to file within the applicable statute of limitations for this matter and South Carolina Tort Claims Act immunity." ECF No. 4-1 at 1. Additionally, Defendant Longieliere asserts he is entitled to Eleventh Amendment immunity. *Id.*

### A. Defendant Longieliere

#### 1. *Official Capacity*

To the extent Defendant Longieliere is sued in his official capacity, he is entitled to immunity under the Eleventh Amendment. Under the Eleventh Amendment, federal courts are barred from hearing claims for damages against a state or its instrumentalities, unless the state has consented to the suit. *Fauconier v. Clarke*, 966 F.3d 265, 279 (4th Cir. 2020); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("It has long been settled that [the Eleventh Amendment's] reference to 'actions against one of the United States encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). Accordingly, unless South Carolina has consented to suit or Congress has waived South Carolina's immunity pursuant to the Fourteenth Amendment, South Carolina (and its agencies) may not be sued for damages in federal or state court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989).

Congress has not abrogated the states' sovereign immunity under § 1983, *Will*, 491 U.S. at 66–67; *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and South Carolina has not consented to suit in federal district court. S.C. Code Ann. § 15-78-20(e) ("Nothing in this chapter is construed as a waiver of the state's or political subdivision's immunity from suit in federal court under the

Eleventh Amendment to the Constitution of the United States. . . ."); *see Pringle v. S.C. Ret. Sys.*,
No. Civ. A. 2:06-3294-PMD, 2007 WL 295626, at *5 (D.S.C. Jan. 29, 2007).

Defendant Longieliere, as a deputy for Defendant BCSO, ECF No. 1-1 at ¶ 2, is considered
an instrumentality of the state when sued in his official capacity. It is well-established in South
Carolina that sheriff's deputies sued in their official capacities are entitled to Eleventh Amendment
immunity. *McCall v. Williams*, 52 F. Supp. 2d 611, 615 (D.S.C. 1999) ("As an arm of the State, a
deputy sheriff is entitled to Eleventh Amendment immunity from civil damages suits in federal
court, unless the State expressly waived this immunity."). As a result, the Eleventh Amendment
bars Plaintiff's claims against Defendant Longieliere in his official capacity. *See Will*, 491 U.S. at
71 (holding that neither a State nor its officials acting in their official capacities are "persons"
amenable to suit for damages under § 1983).

Indeed, Plaintiff appears to concede this point, asserting that he is only pursuing claims
against Defendant Longieliere in his individual capacity. ECF No. 5 at 4. The Eleventh
Amendment does not bar an award of damages against an official in his personal capacity. *See
e.g.*, *Adams v. Ferguson*, 884 F.3d 219, 225 (4th Cir. 2018).

Accordingly, the undersigned recommends Defendants' Motion to Dismiss be granted as
to any claim against Defendant Longieliere in his official capacity.

2. *Individual Capacity: Malicious Prosecution, 42 U.S.C. § 1983*

Plaintiff asserts that Defendant Longieliere maliciously initiated and continued criminal
charges against Plaintiff, despite having exculpatory evidence that proved Plaintiff's innocence,
and failed to adequately investigate matters leading to Plaintiff's arrest, in violation of Plaintiff's
right to procedural due process under the Fourteenth Amendment. ECF No. 1-1 at ¶ 33. Defendants
contend that this claim against Defendant Longieliere in his individual capacity should be

dismissed. ECF No. 4-1 at 5–6.

To establish a cause of action under 42 U.S.C. § 1983, Plaintiff must show: (1) the violation of a right protected by the Constitution or laws of the United States, and (2) that the defendant was acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Mallory v. Holdorf*, No. 3:11-03295-MBS, 2012 WL 4479070, at *4 (D.S.C. Sept. 28, 2012) (explaining that "42 U.S.C. § 1983 is the vehicle by which individuals make legal claims for violations of their federal rights").

When an unreasonable seizure, arrest or prosecution is alleged, such a claim is governed by the Fourth Amendment.[2] *Mallory*, 2012 WL 4479070, at *4 (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)). To establish a § 1983 claim for malicious prosecution based on a Fourth Amendment violation, a plaintiff must show that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor. *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019); *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012); *see also Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014); *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001); *Brooks*, 85 F.3d at 183; *Roberts v. Laurens Cnty. Sheriff's Dep't*, No. C.A. 605-1221-HMH, 2006 WL 361348, at *3 (D.S.C. Feb. 15, 2006).

Defendants argue that "there is no dispute that there was a facially valid arrest warrant issued, which is evidence of probable cause."[3] ECF No. 4-1 at 6. However, Plaintiff's argument

---

[2] In his Amended Complaint, Plaintiff refers to the Fourteenth Amendment to the United States Constitution, which provides in part that no State may "deprive any person of life, liberty, or property without due process of law." *Mallory*, 2012 WL 4479070, at *6 (citing U.S. Const. amend. XIV). However, the claim, as pled, amounts to a "malicious prosecution" claim, and Plaintiff argues in his Response that his claim is for malicious prosecution. ECF No. 5 at 4–6. Accordingly, the undersigned addresses the claim under the Fourth Amendment.

[3] Defendants also argue that "upon information and belief, the [trial] judge considered a motion to dismiss during the trial and denied the same. This makes two separate independent findings of probable cause." ECF No. 4-1 at 6. Defendants also argue that there was no issue raised in

is, in fact, that the warrant was not valid because there was not probable cause for the warrant in the first instance. ECF No. 5 at 4–5.

"Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (alterations in original) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). It requires more than bare suspicion, but less than the evidence necessary to convict, *id.*, and the determination of whether probable cause exists is reviewed under the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). It is an objective standard of probability that reasonable and prudent persons apply in everyday life. *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017). In making this inquiry, the Court is to consider only the information the officers had at the time of the arrest. *Id.*

To demonstrate that an officer seized an individual pursuant to an arrest warrant without probable cause, a plaintiff must show that the officer "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007) (internal quotation marks and citations omitted). To demonstrate a "reckless disregard," a plaintiff must show, in light of all of the evidence, that an officer had "serious doubts as to the truth of his statements or had

---

Plaintiff's criminal case about the validity of the warrant. ECF No. 6 at 2. However, there are no allegations in the Amended Complaint regarding any finding by the trial judge or matters that may or may not have occurred at trial. While these may be facts that bear on the ultimate decision of probable cause, they are not properly before the Court at the dismissal stage.

obvious reasons to doubt the accuracy of the information he reported." *Id.*

Accepting Plaintiff's allegations in the Amended Complaint as true, the undersigned concludes that Plaintiff has stated a claim for malicious prosecution in his First Cause of Action. He alleges that Defendant Longieliere had an arrest warrant issued for Plaintiff's arrest without probable cause and that his criminal proceedings terminated in his favor. *See Hupp*, 931 F.3d at 324. Although Defendants have highlighted allegations in the Amended Complaint that may support a finding of probable cause, Plaintiff has alleged that Defendants had access to additional evidence that would verify the identity of the offender, ECF No. 1-1 at ¶ 26, and had evidence that they had misidentified Plaintiff as the offender. *Id.* at ¶ 27. These allegations, if proven, arguably could support a finding of "reckless disregard" in omitting material facts from the affidavit supporting the arrest warrant for Plaintiff's arrest. *See Miller*, 475 F.3d at 627; *Smith*, 848 F.3d at 253. At this stage of the proceedings, these allegations are sufficient to state a claim for relief against Defendant Longieliere, such that Plaintiff's First Cause of Action should not be dismissed at this time.

**B. Defendant BCSO's Affirmative Defenses Based upon the SCTCA**

In their Motion, Defendants seek dismissal of Plaintiff's state law claims against Defendant BCSO based on affirmative defenses arising under the SCTCA. "The provisions of the [SCTCA] establishing limitations on and exemptions to the liability of the State, its political subdivisions, and employees, while acting within the scope of official duty, must be liberally construed in favor of limiting liability of the State." *Hawkins v. City of Greenville*, 594 S.E.2d 557, 563 (S.C. Ct. App. 2004). The "governmental entity asserting the [SCTCA] as an affirmative defense bears the burden of establishing a limitation upon liability or an exception to the waiver of immunity." *Id.* Moreover, "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the

sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *see Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) ("While no absolute bar exists, a motion to dismiss under Rule 12(b)(6) does not typically resolve the applicability of defenses to a well-pled claim."); *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (stating that a motion to dismiss under Rule 12(b)(6) "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses").

However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman*, 494 F.3d at 464. However, this principle will only apply "if all facts necessary to the affirmative defense clearly appear *on the face of the complaint*." *Id.* (emphasis in original) (internal quotation marks and brackets omitted). With these standards in mind, the undersigned considers Defendant BCSO's affirmative defenses.

### 1.    Statute of Limitations

Defendants argue that Plaintiff's state law claims against Defendant BCSO are barred by the two-year statute of limitations, as set forth in the SCTCA, S.C. Code Ann. § 15-78-110. ECF No. 4-1 at 6–9. Plaintiff does not dispute that his claims are subject to a two-year statute of limitations.

Moreover, the parties agree that the statute of limitations begins to run when a cause of action reasonably should have been discovered. *See Dean v. Ruscon Corp.*, 468 S.E.2d 645, 647 (S.C. 1995); *see also Young v. S.C. Dep't of Corr.*, 511 S.E.2d 413, 416 (S.C. Ct. App. 1999). In determining whether the cause of action should have been discovered, it must be decided when the facts and circumstances of the injury would put a person of common knowledge on notice that

10

some right has been invaded or the claim against another party exists. *Benton v. Roger C. Peace Hosp.*, 443 S.E.2d 537, 539 (S.C. 1994) (citing *Smith v. Smith,* 354 S.E.2d 36, 40 (S.C. 1987); *Snell v. Columbia Gun Exch., Inc.*, 278 S.E.2d 333, 334 (S.C. 1981)).

The determinative issue before the Court is when the statute of limitations on Plaintiff's state law claims accrued.

a. <u>Gross Negligence</u>

The genesis of Plaintiff's claims in this case is that he did not commit the crimes of which he was accused, that he was maliciously prosecuted, and that Defendant BCSO was grossly negligent in allowing his prosecution. In support of his gross negligence claim, Plaintiff contends that Defendant BCSO was grossly negligent in: initiating and continuing the prosecution of criminal claims against Plaintiff despite having exculpatory evidence that would have proved his innocence; failing to properly train their officers in instituting, investigating and pursuing criminal proceedings against individuals suspected of committing a crime; failing to supervise their officers to avoid the institution and pursuit of criminal proceedings against individuals suspected of committing a crime without probable cause; and failing to investigate claims of malicious prosecution, thereby encouraging an institutional culture where negligence, recklessness and the malicious pursuit of criminal proceedings are tolerated. ECF No. 1-1 at ¶ 36.

Defendants contend that Plaintiff knew or should have known he had a claim for gross negligence as of the date of his arrest on or around January 15, 2020. *See* ECF No. 1-1 at ¶¶ 8–13. At that time, Plaintiff was informed that there was a warrant out for his arrest for failing to stop for a blue light and evading arrest in October of 2019. *Id.* at ¶¶ 12–13. According to Plaintiff's Amended Complaint, he knew at that time that he had not committed the crimes for which he was being arrested. *Id.* at ¶ 14.

Plaintiff's gross negligence claim hinges on alleged failures to train and supervise. *Id.* at ¶ 36. Defendants argue that all training and supervision applicable to the actions taken in October 2019 and January 2020 was performed before the warrant was executed and before Plaintiff was arrested. ECF No. 4-1 at 8. Moreover, to "create an institutional culture" where such was tolerated, the acts would have had to occur prior to 2019 when the warrant was sought. *Id.* at 8–9. The undersigned agrees.

In response, Plaintiff argues that he only discovered the extent of the exculpatory evidence ignored and withheld by Defendants at his criminal trial on November 10, 2022. ECF No. 5 at 6. However, under the SCTCA, the statute of limitations begins to run when the plaintiff should know that he might have a potential claim against another, not when he develops a full-blown theory of liability. *Joubert v. S.C. Dep't of Soc. Servs.*, 534 S.E.2d 1, 8 (S.C. Ct. App. 2000); *see also Wiggins v. Edwards*, 442 S.E.2d 169, 170 (S.C. 1994) (exercise of reasonable diligence means simply that injured party must act with some promptness where facts and circumstances of injury would put person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist; statute of limitations begins to run from this point and not when advice of counsel is sought or full-blown theory of recovery is developed); *Burgess v. Am. Cancer Soc'y*, 386 S.E.2d 798, 799 (S.C. Ct. App. 1989) (statute starts to run upon discovery of such facts as would have led to knowledge thereof if pursued with reasonable diligence).

According to Plaintiff, each time Defendants failed to come forth with the evidence that would establish Plaintiff's innocence constituted a separate and distinct act of negligence that triggered a new actionable claim. *See State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 199–200 (S.C. 2015) (noting that fixing the deadlines on the date of the first

instance of misconduct when there is repeated wrongdoing would allow "parties engaged in long-standing malfeasance [to] thereby obtain immunity in perpetuity from suit even for recent and ongoing malfeasance. In addition, where misfeasance is ongoing, a defendant's claim to repose, the principal justification underlying the limitations defense, is vitiated") (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 880 (2013)).

Plaintiff also argues that Defendant Longieliere continued to receive training after Plaintiff's arrest, suggesting that the claim for gross negligence would continue to accrue after Plaintiff's arrest. ECF No. 5 at 7.

The undersigned is not persuaded by these arguments. In this instance, Plaintiff has not alleged separate and distinct acts of negligence triggering a new actionable claim in his Amended Complaint. He has not set forth separate and distinct acts of negligence nor has he alleged separate claims. Plaintiff's allegations of gross negligence pertain to the conduct giving rise to the arrest warrant, for which he contends there was no probable cause, and his arrest and prosecution, for which he contends there was not proper training or supervision. The fact that Defendant Longieliere continued to receive training after Plaintiff's arrest does not change these facts.

Taking the allegations in the Amended Complaint as true and drawing all reasonable inferences therefrom, a person of common knowledge would have been on notice that some right had been invaded, or the claim against Defendant BCSO for gross negligence existed, as of January of 2020. *See Benton*, 443 S.E.2d at 539. All facts necessary to show that Plaintiff knew or should have known about his claim for gross negligence more than two years before he filed his complaint clearly appear on the face of the Amended Complaint. *See Goodman*, 494 F.3d at 464. Because Plaintiff did not file this lawsuit until four years later, in January of 2024, his claim for gross negligence against Defendant BCSO is barred by the applicable two-year statute of limitations.

Accordingly, the undersigned recommends granting Defendants' Motion to Dismiss Plaintiff's claim against Defendant BCSO for gross negligence.

      b.  <u>Malicious Prosecution</u>

It is unclear whether Defendants intend to assert a statute of limitations argument as to Plaintiff's state law claim against Defendant BCSO for malicious prosecution. While Defendants argue the statute of limitations bars Plaintiff's state law claims, which would include the claim against Defendant BCSO for malicious prosecution, the arguments appear to address only the gross negligence claim. *See* ECF No. 4-1 at 6–9. To the extent Defendants intend to argue the state law claim for malicious prosecution is barred by the two-year statute of limitations, the undersigned disagrees.

As with Plaintiff's § 1983 malicious prosecution claim, his state law malicious prosecution claim requires a showing that judicial proceedings were terminated in the plaintiff's favor. *Peirce v. Bryant*, No. 4:14-CV-2927-BHH-TER, 2016 WL 11410276, at *4 (D.S.C. Feb. 1, 2016) (citing *Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642, 648 (S.C. 2006)), *report and recommendation adopted*, No. CV 4:14-2927-BHH, 2016 WL 1061060 (D.S.C. Mar. 17, 2016), *aff'd sub nom. Pierce v. Bryant*, 674 F. App'x 323 (4th Cir. 2017). Therefore, the date of accrual for a malicious prosecution claim is not until the criminal proceedings end in the plaintiff's favor. As stated above, the proceedings against Plaintiff were terminated in November of 2023. Plaintiff filed this lawsuit in January of 2024, well within the two-year statute of limitations. Accordingly, the undersigned recommends denying Defendants' Motion to Dismiss Plaintiff's state law claim for malicious prosecution on the basis of the statute of limitations.

      *2.*    *The Immunity Defense*

Defendants argue that Plaintiff's malicious prosecution claim against Defendant BCSO

should be dismissed based on SCTCA immunity pursuant to S.C. Code Ann. § 15-78-60(23). As with the statute of limitations defense, a claim of immunity is an affirmative defense. Thus, for the immunity defense to be decided on a 12(b)(6) motion, all facts necessary to the affirmative defense must clearly appear on the face of the Amended Complaint. *See Goodman*, 494 F.3d at 464.

"To maintain an action for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause; and (6) resulting injury or damage." *Pallares v. Seinar*, 756 S.E.2d 128, 131 (S.C. 2014) (alterations and internal citation omitted). The SCTCA explicitly lists exceptions to its waiver of immunity, including that a "governmental entity is not liable for a loss resulting from . . . [the] institution or prosecution of any judicial or administrative proceeding." S.C. Code Ann. § 15-78-60(23). Because the first element of a malicious prosecution claim requires the institution or continuation of original judicial proceedings, "[i]t is fairly clear from the plain language of the statute, particularly § 15-78-60(23), that the legislature intended to exclude claims for malicious prosecution from the waiver of immunity for governmental entities in the [SCTCA]." *Thompson v. City of Columbia*, No. 3:05-cv-1605, 2005 WL 8164911, at *4 (D.S.C. July 21, 2005).

As stated above, the Amended Complaint clearly alleges that Defendant BCSO is a governmental entity. *See, e.g.*, ECF No. 1-1 at ¶ 3. Accordingly, the undersigned finds that Defendant BCSO is immune from suit on the malicious prosecution claim. *See Bellamy v. Horry Cnty. Police Dep't*, No. 4:19-CV-03462-RBH-KDW, 2020 WL 2559544, at *5 (D.S.C. Apr. 30, 2020), *report and recommendation adopted*, No. 4:19-CV-03462-RBH-KDW, 2020 WL 2556953 (D.S.C. May 20, 2020) (granting motion to dismiss malicious prosecution claim against police

department).

Plaintiff does not dispute the immunity provisions under the SCTCA but, instead argues that, as found by the U.S. Supreme Court in *Malley v. Briggs*, 475 U.S. 335, 342 (1986), "an officer or agency applying for a warrant and/or investigating criminal charges should be seen differently from, for example, a prosecutor seeking an indictment." ECF No. 5 at 8. Plaintiff argues that the policy applied in *Briggs* in the context of immunity under § 1983 should apply here in the context of malicious prosecution claims against law enforcement under the SCTCA. ECF No. 5 at 8. According to Plaintiff, while Defendant BCSO initiated and pursued criminal proceedings against Plaintiff, the actions they took should be treated differently than those taken by others involved in other judicial phases of the criminal proceedings.

However, the *Briggs* case addressed qualified immunity as to an individual law enforcement officer for a claim brought pursuant to 42 U.S.C. § 1983 and is inapplicable to Plaintiff's state law claim for malicious prosecution against Defendant BCSO. For the foregoing reasons, the undersigned recommends that Plaintiff's claim for malicious prosecution against Defendant BCSO be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendants' Motion to Dismiss (ECF No. 4) be **GRANTED** in part and **DENIED** in part. Specifically, the undersigned recommends that Defendants' Motion as to the malicious prosecution, pursuant to 42 U.S.C. § 1983, against Defendant Longieliere be **DENIED.**

The undersigned further recommends that Defendants' Motion be **GRANTED** as to the state law claims for gross negligence and malicious prosecution against Defendant BCSO, such that Defendant BCSO should be dismissed as a defendant from this action.

**IT IS SO RECOMMENDED.**

Molly H. Cherry
United States Magistrate Judge

September 6, 2024
Charleston, South Carolina

**The parties are directed to the next page for their rights to file objections to this recommendation.**

17

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).